IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENTES WEST, # K-82893, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-788-MJR |
| | ) |
| MICHAEL P. ATCHISON, | ) |
| CEDRIC A. McDONNOUGH, | ) |
| C. JUDD, A. HOOD, | ) |
| C/O ULEN, HUDSON, | ) |
| C/O BAKER, TIMOTHY VEATH, | ) |
| LINDA WHITESIDE, GROGG, | ) |
| and UNKNOWN PARTY | ) |
| (Health Care Officials), | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving sentences for murder and armed robbery. He claims that while he was confined at Menard in 2012, various Defendants failed to protect him from two gang-related attacks perpetrated by other inmates, and he was denied pain medication for his injuries.

More specifically, Plaintiff states that beginning on April 17, 2012, and continuing through late June 2012, he made repeated written and verbal requests to Menard officials for protection from other inmates (Doc. 1, pp. 10-14). He had been threatened by members of the Latin Folks gang, who had ordered a "hit" on him (Doc. 1, p. 18). On April 17, while Plaintiff was housed in Menard's North 2 Unit, he wrote to then-Warden Defendant Atchison and to Defendant Whiteside (Menard Mental Health Director) asking for protection.

He received no response from either.

On April 25, 2012, Plaintiff was moved back to the East cell house, where the threat was greater. On May 9, 2012, he explained his concerns to Defendant McDonnough (a correctional officer), and requested to be placed in protective custody (Doc. 1, p. 10). Defendant McDonnough sent Plaintiff downstairs to wait. Defendant McDonnough returned with the cell house sergeant and Defendant Judd. Plaintiff was handcuffed and Defendant Judd took him to North 2 wing. On the way, Plaintiff learned he was being taken to segregation, not protective custody, and the sergeant stated this was because Plaintiff had "refused housing" (Doc. 1, p. 11). Plaintiff protested because he feared he was in greater danger of a "hit" from the problem inmates in segregation. Defendant Judd became angry and tightened Plaintiff's handcuffs to the extent he had pain and numbness for several days. Defendant McDonnough issued Plaintiff a disciplinary ticket for disobeying an order to lock up in his cell (Doc. 1, pp. 2, 29). Plaintiff contends the ticket was fabricated, because he merely requested protective custody and did not disobey any order or refuse housing.

As soon as Plaintiff was placed in segregation, he requested to speak to an Internal Affairs officer about his safety. Over the next several days, Defendants Hood, Baker, and Ulen put off Plaintiff's requests, even though Plaintiff fully explained to them the basis for his fear of an attack.

On May 11, 2012, Plaintiff appeared before Defendant Veath, who chaired the disciplinary committee, for a hearing on the ticket issued by Defendant McDonnough (Doc. 1, pp. 12, 29). Plaintiff stated that he had not refused housing, and explained his safety concerns. Under Defendant Veath's questioning, Plaintiff said that the officers were lying about the incident. Defendant Veath became angry and found Plaintiff guilty of the infraction. He was

punished with two months in segregation.

Soon after the hearing, Plaintiff was told by Defendant Ulen that Internal Affairs would be coming to see Plaintiff, but the promised meeting did not happen on May 12.  The next day, Plaintiff wrote to Internal Affairs requesting an interview, and sent a second letter to Defendant Atchison.

On May 15, 2012, Plaintiff sent an emergency grievance to Defendant Atchison stating that he was in fear of imminent harm.  He saw Defendant Hudson (Internal Affairs officer) in passing, explained his concerns, and asked if he could stay in his single-man cell until his segregation term was over.  Defendant Hudson said he would look into the matter.  On May 16, Plaintiff personally told Defendant Whiteside of his safety concerns, hoping for assistance and to have those concerns documented (Doc. 1, p. 13).

On May 22, 2012, Plaintiff was moved to a different segregation cell, where he was housed with another inmate (Martinez) whom he suspected of being a Latin Folks gang member.  He then found out Martinez was indeed a member of that gang, so Plaintiff lied to him about his name.  Plaintiff declined the opportunity to go out of the cell for recreation, to avoid being noticed.

On June 10, 2012, Plaintiff wrote to his counselor (Rowold, who is not a Defendant) to inquire about the emergency grievance he had sent to Defendant Atchison on May 15.  On June 20, 2012, Plaintiff wrote to his new counselor (Paine), again inquiring about his grievances, to which he had received no response.  On June 22 and 24, 2012, Plaintiff contacted his newest counselor, Defendant Grogg, about his missing grievances (Doc. 1, p. 14).  Soon after this, Plaintiff learned that a Latin Folks member known as "Smokey" was housed near him.  Plaintiff had specifically mentioned Smokey when he told Defendant Hudson about his fear that

he would be harmed.

On July 2, 2012, Martinez (the Latin Folks cellmate) attacked Plaintiff in their cell, hitting him repeatedly with a fan. Plaintiff did not fight back. He was taken to the Health Care Unit with pain in his arm, knee, and shoulder, but the John/Jane Doe who treated him failed to give Plaintiff any pain medication.

On July 4, Plaintiff wrote to Defendant Whiteside asking to move up his appointment with her so he could tell her about the assault. He wrote another emergency grievance to Defendant Atchison on July 12, and sent a copy to Defendant Grogg, informing them of the assault by Martinez. In the grievance, he complained that his pleas for protection had been ignored, and that officials had failed to protect him out of retaliation for an earlier grievance Plaintiff had filed when he first arrived at Menard (Doc. 1, p. 14). Plaintiff does not further describe the nature of that earlier grievance or its date.

On July 17, 2012, while Plaintiff was outside, he was assaulted for a second time by "Smokey" and another Latin Folks member. This time, when no officers intervened to stop the attack, Plaintiff eventually fought back, hitting Smokey while the other inmate was punching Plaintiff on the back of his head.[1] Plaintiff was taken to Health Care with an eye injury, headache, bruises, and minor bleeding. Again, he was not given any pain medication by the unidentified health care worker. The next day (July 18, 2012), Plaintiff was transferred to Pontiac Correctional Center.

In December 2012, Plaintiff had a video hearing before the Administrative Review Board on his protective custody request, which had been denied by Pontiac officials (Doc. 1, p. 15). Plaintiff was eventually approved for protective custody (Doc. 1, p. 9).

---

[1] Plaintiff was issued tickets for fighting after both assaults and was found guilty in both cases, receiving one month in segregation for each case (Doc. 1, pp. 30-31). He does not raise any claims in reference to these disciplinary actions.

Plaintiff seeks compensatory and punitive damages for the Defendants' failure to protect him from the two assaults despite his requests for protection; for denying him access to the court by failing to answer his grievances; and for inadequate medical care after the assaults (Doc. 1, p. 16).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

> **Count 1:** Eighth Amendment claim for failure to protect Plaintiff from the two assaults (on July 2 and July 17, 2012), against Defendants Atchison, Whiteside, McDonnough, Hood, Ulen, Hudson, and Baker, and against Defendant Grogg for failure to protect Plaintiff from the July 17 attack;
>
> **Count 2:** Eighth Amendment claim for deliberate indifference to Plaintiff's need for pain medication following the two assaults, against the Unknown (John/Jane Doe) Health Care Officials who treated Plaintiff on July 2 and July 17, 2012.

However, Plaintiff's allegations regarding denial of access to the courts by those Defendants who ignored his grievances (**Count 3**), and retaliation (**Count 4**) fail to state a claim upon which relief may be granted, and shall be dismissed.

**Count 1 – Failure to Protect from Assault**

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order to succeed on a claim for failure to protect, a plaintiff must prove that prison officials were aware of a specific,

impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

According to Plaintiff's complaint, he explained his concerns about the threat posed by the Latin Folks, and requested the Defendants listed in Count 1 above to protect him. He did so in writing on four occasions to Defendant Atchison. It appears that Plaintiff only asked Defendant Grogg for protection following the first attack, when he sent her a copy of his emergency grievance on July 12, 2012. None of these Defendants took any steps to protect Plaintiff or even to investigate his claims. At this stage of the litigation, this claim merits further review.

However, Count 1 shall not proceed against Defendants Judd or Veath. Defendant Judd merely escorted Plaintiff to segregation after the cell house sergeant ordered him there. Plaintiff does not allege that he told Defendant Judd about the danger he believed he was in or that he asked Defendant Judd to protect him – he merely states that he told Defendant Judd he thought he was being sent to protective custody (Doc. 1, p. 11). While Plaintiff described the pain he experienced after Defendant Judd tightened his handcuffs, he does not attempt to raise an excessive force claim in this complaint. The factual statements regarding Defendant Judd do not support a claim against him for failing to protect Plaintiff from a known, specific risk of attack. Defendant Judd shall therefore be dismissed from the action without prejudice.

Plaintiff's only described encounter with Defendant Veath was the May 11, 2012, hearing on the disciplinary ticket, where Plaintiff was charged with refusing housing/disobeying an order (Doc. 1, pp. 12, 29). Plaintiff raised the defense that he had simply requested protective custody and had not refused housing, but there is no indication that Plaintiff asked Defendant Veath to protect him from any specific threat. Nor do the circumstances suggest that Defendant Veath, who was presiding over Plaintiff's disciplinary hearing, had any duty to take action to secure protection for Plaintiff – instead, his responsibility was to determine whether Plaintiff was guilty of the charged conduct. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (a plaintiff may not impose liability on every prison official who is made aware of a possible constitutional violation). Defendant Veath shall also be dismissed from the action without prejudice.

One final point – in addition to the claim that Defendant Warden Atchison personally failed to protect Plaintiff, he alleges that Defendant Atchison was "negligent" in managing the staff under his supervision (Doc. 1, pp. 1, 15). Defendant Atchison may only be held individually liable for his own action (or inaction) in response to Plaintiff's requests for protection. He cannot be held vicariously liable for any constitutional violations committed by those under his supervision. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* is not applicable to § 1983 actions).

**Count 2 – Deliberate Indifference to Medical Needs**

On both occasions following the attacks on Plaintiff, he informed the health care workers who treated him that he was in pain, yet was given no medication for pain relief. This claim also survives § 1915A review – however, the claim cannot proceed until Plaintiff identifies by name the individuals who refused to provide pain treatment. In order to facilitate Plaintiff's

ability to conduct discovery to identify these Unknown Defendants, the current Warden of Menard (Kimberly Butler) shall be added as a party so that she may respond to Plaintiff's discovery requests. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555-56 (7th Cir. 1996) (collecting cases) (court may employ various means to facilitate *pro se* prisoner's discovery of identities of parties who may have violated his rights).

**Dismissal of Count 3 – Denial of Access to Courts**

Plaintiff asserts that the failure of Defendants Atchison, Grogg, and others to respond to his grievances denied him access to the courts (Doc. 1, pp. 13, 16). However, Plaintiff has succeeded in bringing this lawsuit, and fails to identify any way in which any Defendant has hindered him from doing so. In order to sustain an access-to-courts claim, Plaintiff must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (plaintiff must connect defendants' conduct to his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions"); *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Plaintiff makes no such connection.

It is true that prisoners are required to exhaust their administrative remedies through the grievance procedure before bringing a civil rights suit. 42 U.S.C. § 1997e(a). A defendant who believes a plaintiff failed to do so may raise non-exhaustion as an affirmative defense. If such a defense is raised, the alleged lack of response to Plaintiff's grievances will be relevant to the question of exhaustion. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (the failure to respond to inmate grievances makes the administrative remedy process "unavailable"). However, the failure to respond to grievances does not amount to an

independent constitutional claim. Prison grievance procedures are not constitutionally required, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Therefore, **Count 3** shall be dismissed with prejudice.

**Dismissal of Count 4 – Retaliation**

Finally, Plaintiff asserts that the officials who failed to protect him from the attacks were motivated by the desire to retaliate against him for a grievance he had filed when he arrived at Menard. However, he does not describe that grievance – there is no indication of the subject, the date it was filed, or which Defendant(s) were named in the grievance. Further, Plaintiff does not say whether one, some, or all of the named Defendants engaged in retaliation on account of the grievance.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). The pleading requirements for a retaliation claim are not onerous – a plaintiff merely needs to identify the protected act that prompted the retaliation, the act of retaliation, and state which defendant(s) retaliated against him. "All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

As pled, Plaintiff's retaliation claim is too vague regarding the earlier grievance to put any Defendant on notice of the basis for the claim. Further, Plaintiff did not indicate which Defendant(s) allegedly had a retaliatory motive when they refused to take protective measures.

Therefore, if Plaintiff wishes to pursue his retaliation claim, he must submit an amended complaint that includes this additional information. **Count 4** shall be dismissed without prejudice, with leave to amend.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

The Clerk is **DIRECTED** to add Menard Warden **KIMBERLY BUTLER** as a Defendant for the purpose of responding to Plaintiff's discovery requests.

**COUNT 3** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 4** is **DISMISSED** without prejudice and with leave to amend, for failure to state a claim upon which relief may be granted. Defendants **JUDD** and **VEATH** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, should Plaintiff wish to proceed on his retaliation claim in **COUNT 4**, Plaintiff shall file an amended complaint (to be labeled "First Amended Complaint"), within 35 days of the entry of this order (on or before September 8 2014). If the amended complaint still fails to state a claim as to Count 4, or if Plaintiff does not submit an amended complaint, the dismissal of Count 4 shall become a dismissal with prejudice. The amended complaint shall be subject to review pursuant to § 1915A.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, and in addition to Count 4, must also

contain the allegations in Counts 1 and 2, which shall receive further review as determined above. In other words, all the claims must be presented in a single document. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Plaintiff may proceed with his claims in Counts 1 and 2 even if he chooses not to submit an amended complaint as to Count 4.

The Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form, in order to assist him in preparing an amended complaint.

The Clerk of Court shall prepare for Defendants **ATCHISON, McDONNOUGH, HOOD, ULEN, HUDSON, BAKER, WHITESIDE, GROGG** and **BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used

only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or

give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 1, 2014**

                                                      s/ MICHAEL J. REAGAN
                                                    United States District Judge